## SACKETT PLASTER BOARD CO. v. RUTKOWSKY.

(Circuit Court, D. New Jersey. February 3, 1909.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PLASTER BOARD.

The Sackett patent, No. 520,123, for a board or plate for use as a substitute for lath and plaster as an inside wall covering, consisting of alternate layers of paper and a mineral plaster in the nature of a lime cement, was not anticipated, and discloses invention; also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

W. B. Hutchinson, for complainant.
Edward Q. Keasby, for defendant.

LANNING, District Judge. The defendant is charged with infringement of patent No. 520,123, for improvements in inside wall coverings, granted May 22, 1894, to Augustine Sackett, and now owned by the complainant. The specification of the patent declares its object to be "to provide boards or plates which may be used as a substitute for lath and plaster as a material for forming the inner walls of houses or rooms." The boards are designed to be nailed to the studding of walls or partitions. They consist of "alternate webs of paper and layers of some hard adherent plastic substance in the nature of a lime cement." The patent also says:

> "The substance which I have thus far found preferable is plaster of paris (calcined gypsum). The inherent brittleness of the plaster or other substance of this character is sufficiently overcome by applying it in thin layers alternated with webs of paper to produce, as the result of the superposition of a suitable number of such layers and webs, a board or plate of great stiffness, strength, rigidity, and toughness in comparison with its thickness, and which is in every way admirably adapted as a material for inside wall surfaces. * * * Ordinarily from four to eight or ten sheets of paper, with their intervening layers of plaster composition, will be used, the number depending upon the thickness of the board desired. For a board three-sixteenths of an inch thick, which would be suitable for ordinary purposes, eight layers give a good result. The thickness of the layer of plaster composition may vary greatly, say, for example, from one one-hundredth to five one-hundredths of an inch, or even thicker."

When the requisite number of layers of plaster and webs of paper have been placed upon one another, the material is subjected to pressure and dried in a perfectly flat condition. One side of the board is water-proofed by water-proof paper, varnish, or other water-proof composition. The board, thus made, is declared to be fire-proof, to make a dry, firm, and durable wall surface, and to take paint or calcimine as well as ordinary plaster walls. "My invention," the patentee also says, "excludes cements or binding materials in the nature of rosins, glue, or other cements of an animal or vegetable origin. My invention is essentially limited to cements of mineral origin, or the essential ingredients of which are of a mineral character. It excludes, also, waxy materials, and, in fact, all materials which soften by heat, such for example as ozocerite and bitumen. I am aware that bituminous cements, such as pitch, have been used, combined with sheets of paper in the manufacture of roofing material, but such products are essentially different from the new product introduced by my invention."

The claims are:

> "(1) A flat board or plate for wall coverings consisting of webs of paper alternated with layers of hard adherent plastic substance in the nature of lime cement, substantially as and for the purpose set forth.
> "(2) A flat board or plate for wall coverings consisting of webs of paper alternated with layers of plaster, substantially as and for the purpose set forth.
> "(3) An inside wall covering as a substitute for lath and plaster consisting of boards or plates of alternated paper and plaster or other equivalent plastic substance in the nature of a lime cement, the boards being stiff and firm, but sufficiently soft to admit the driving of nails through them to fasten them to the studding, substantially as set forth."

The defense is that the patent is invalid for lack of invention. The contention is that the disclosures of a number of the patents of the prior art are so suggestive of the product described by Sackett that it is impossible to attribute to it the novelty which must be found in every good patent. As originally filed, Sackett's application was broad enough to cover a board or plate used for other than inside wall coverings. The application was repeatedly rejected by the examiner in the Patent Office, but was finally allowed by the board of examiners on condition that the claims should be confined to wall coverings. After referring to Martindale's patent, No. 286,321, dated October 9, 1883, for a paving block, made by cutting it from a compacted mass of layers of paper cemented together, and to Kelley's patent, No. 273,689, dated March 6, 1883, for a covering for steam pipes, etc., made by spreading a plaster combination on paper and rolling it into a tube, and stating that neither of these products was intended as a wall covering nor as a substitute for lath and plaster on any surface, the board said:

"We think that the conception of an article containing plaster which in sheets is applicable when dry by unskilled labor to walls to subserve the purpose of lath and plaster, which requires the services of men skilled in two trades, followed by the embodiment of the idea in this new structure, is an invention, and therefore, while sustaining the rejection of claims 4 and 5, we must reverse the decision of the examiner as to claims 1, 2, and 3, subject to the requirement for their amendment to confine them to wall coverings."

The defendant cites now, however, patents of the prior art which are not referred to in the file wrapper or in the proceedings before the board of examiners. The most important of them in the present inquiry, I think, are the Hamilton reissued patent, No. 10,387, dated September 25, 1883, and the Gardner patent, No. 361,686, dated April 26, 1887. The first of these is for a paper board formed of several sheets of paper saturated with resin and oil, then coated with a solution of milk-curd and lime, and finally passed through heated pressure rollers. The patent declares that the pressure causes the sheets "to adhere together and to form a board that has any desired thickness or size," and that the board, thus constructed, "is thoroughly homogeneous, is entirely unaffected by water or dampness, is in a great degree fire-proof, and possesses greater density, strength, and durability than is possessed by any of the woods ordinarily used for building purposes." The design of the invention is said to be "to render practicable the employment of paper for purposes to which wood, metal, or stone has heretofore been applied." The Gardner patent relates to the ornamentation or construction of walls, ceilings, etc., by the use of what is known as "straw lumber," such as that described in the Hamilton patent above mentioned, which Gardner owned at the time of the issue of his patent. In the specification of the Gardner patent the patentee says that:

"With suitable sheets of this article I propose to form the walls and ceilings of buildings, halls and dwellings, or to decorate walls already formed in such places."

Its only claim is for "a wall or ceiling decorated by the application directly to the studding or joists of straw-board lumber, embossed

on the exposed surface." Evidently straw-board lumber thus used takes the place of lath and plaster. But it is a material whose sheets of paper are saturated with resin and oil. Paper thus treated must be highly inflammable. While the sheets are coated with a solution of milk-curd and lime, 1 am satisfied from the description in the Hamilton patent, and from the Hamilton board produced in court, which is admittedly the board used by Gardner, that the coatings are suffi-. cient only to aid in cementing together the sheets of paper upon pressure, and not sufficient materially to reduce the inflammability of the product.

In the Sackett patent cements, or binding materials in the nature of resins, glue, and other cements of an animal or vegetable origin, and waxy materials, ozocerite, bitumen, and other materials that soften by heat, are excluded. The cements used are of a mineral character. Emphasis is given to the fact that there are between the sheets of paper intervening layers of plaster or other hard adherent plastic substance in the nature of a lime cement. While the patent declares that the thickness of the layers may vary from one one-hundredth to five one-hundredths of an inch, it also declares that they may be "even thicker," and the claims do not in anywise limit their thickness. The product is expressly declared to be a substitute for lath and plaster in constructing the inner walls of houses and rooms, and it is, in my opinion, fire-proof to a much greater degree than are the Hamilton and Gardner products. We may fairly speak of the Sackett product, I think, as a plaster board with paper binders, and of the Hamilton and Gardner products as paper boards with very light binders of resin, oil, milk-curd, and lime. Indeed, Gardner himself says that the Hamilton product "consists of a board or sheet of homogeneous material formed of several sheets of paper cemented and united by heat and pressure."

I deem it unnecessary to make particular reference to any of the other patents of the prior art mentioned in the proofs. They have all been examined, but none of them anticipates Sackett. He appears to have been the first to make a plaster board that could be successfully used as a substitute for lath and plaster. The business carried on under the patent has grown steadily from the date of its issue in 1894 until the present time. It now amounts to about $600,000 a year. In all these 13 or 14 years builders and manufacturers generally seem to have refrained from acts of infringement of the patent, and thereby to have conceded its validity. The defendant is the first, so far as the proofs show, who has ventured to turn out a product essentially the same as that of the complainant. The very fact that he copies the complainant's product, and not that described in any of the patents of the prior art, is strong evidence of the superiority of the thing copied.

In the brief of the counsel for the defendant it is admitted that, when this suit was begun, the defendant was making and vending boards that "were within the terms of the patent." The exhibits of the defendant's manufacture confirm the admission.

Concluding that the complainant's patent is valid, there will be a decree for injunction, and, if the complainant desires it, for an accounting of profits and damages.